

DEPARTMENT OF THE NAVY
OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20350-1000

11 JAN 1996

From: Secretary of the Navy
To:   Vice Admiral Walter J. Davis, Jr., U. S. Navy,
      ███████/1310

Subj: PRECEPT CONVENING FISCAL YEAR 1997 SELECTION BOARDS TO CONSIDER OFFICERS IN THE LINE OF THE NAVAL RESERVE FOR PROMOTION TO THE PERMANENT GRADE OF CAPTAIN

Encl: (1) Board Membership
      (2) Supplemental Guidance

1.  The selection boards, consisting of yourself as president and the officers listed in enclosure (1), are ordered to convene at the Navy Department, Washington, DC, at 0900, Monday, 22 January 1996, or as soon thereafter as may be practicable.

2.  The function of the boards is to consider officers in the line of the Naval Reserve for promotion to the grade of captain. The records and names of all eligible officers, determined as of the date the boards convene, will be furnished to the boards, and the names of those officers who are in the promotion zone will be indicated. The boards shall carefully consider, without prejudice or partiality, the case of each officer whose name is furnished.

3.  The boards shall recommend for promotion those officers whom a majority of the members considers best qualified, giving due consideration to the needs of the Navy for officers with particular skills. In addition, each officer recommended must be fully qualified for promotion; that is, each officer must be capable of performing the duties of the next higher grade. The "best qualified" standard shall be applied uniformly to all eligible officers whether in, or above the promotion zone.

4.  <u>Unrestricted Line</u>.

    a. In determining who is best qualified in the unrestricted line, you should consider that a broad base of skills and experience among the Navy's future leaders is the key to maintaining our ability to meet mission requirements. The needs of the Navy require that our future leaders of the Naval Reserve possess the qualities to excel in combat as commanders or in support of operational commanders. Proven excellence in training and operational environments are important measures of the qualities required. Performance while in command as well as potential for major afloat or ashore command is the ultimate test of fitness for captain promotion. Officers may have also demonstrated leadership, skill, integrity and resourcefulness in other difficult and challenging joint as well as in-service

Subj: PRECEPT CONVENING FISCAL YEAR 1997 SELECTION BOARDS
TO CONSIDER OFFICERS IN THE LINE OF THE NAVAL RESERVE
FOR PROMOTION TO THE PERMANENT GRADE OF CAPTAIN

assignments. Just as you must carefully consider positive outstanding performance, you must consider documented incidents of misconduct and substandard performance, which are included in an officer's official service record, in determining those officers who are best qualified for promotion. Members must consider carefully each such incident in connection with board deliberations. For those eligible officers who are recommended for promotion and who have received disciplinary action or whose privileged information record (fiche five) contains matters relating to conduct or performance of duty, each board member shall personally review the information contained therein, prior to the final board decision.

    b. When considering officers in the unrestricted line, the "best qualified" standard shall be applied without regard to designator. The promotion opportunity percentage for the unrestricted line set forth below is applicable to the unrestricted line competitive category as a whole; it has no applicability to individual communities, designators, or subspecialties within the unrestricted line competitive category. Though this may result in varying overall promotion opportunities among the unrestricted line designators, the future of the Navy will be best served thereby.

    c. The Navy needs highly specialized officers whose extensive education, training and managerial expertise are of overriding importance to the Navy in a time of increasing technological sophistication. These officers, by totally committing to a particular specialty, have often been required to do longer and more frequent specialty tours to permit their continued technical growth and allow the Navy full use of their expertise. As unrestricted line officers pursuing specialty expertise, they have been assigned outside their communities' traditional career patterns. The quality of their performance in their specialty should be a criterion for their promotion. Such performance and expertise should be given weight equal to that ordinarily given to the performance of other members of their communities who have followed the traditional career patterns.

5. <u>Restricted Line</u>.

    In determining who is best qualified in the restricted line, you should consider a balance of skills and experience among the Navy's future leaders as key to maintaining our ability to meet mission requirements. The needs of the Navy require its future leaders of the Naval Reserve to possess the qualities to excel in combat as commanders or in support of operational commanders. Proven excellence in training and operational environments is an important measure of the qualities required. Potential for command and performance while in command are the ultimate tests of fitness for promotion. Officers may also have demonstrated leadership,

Subj:  PRECEPT CONVENING FISCAL YEAR 1997 SELECTION BOARDS
       TO CONSIDER OFFICERS IN THE LINE OF THE NAVAL RESERVE
       FOR PROMOTION TO THE PERMANENT GRADE OF CAPTAIN

skill, integrity and resourcefulness in other difficult and challenging joint as well as in-service assignments. Just as you must carefully consider positive outstanding performance, you must consider documented incidents of misconduct and substandard performance, which are included in an officer's official service record, in determining those officers who are best qualified for promotion. Members must consider carefully each such incident in connection with board deliberations. For those eligible officers who are recommended for promotion and who have received disciplinary action or whose privileged information record (fiche five) contains matters relating to conduct or performance of duty, each board member shall personally review the information contained therein, prior to the final board decision.

6. Because these boards are considering candidates to a very senior rank, particular emphasis should be given, within the parameters of the best and fully qualified selection standard, to selection of those who have demonstrated qualities of imagination and breadth of vision.

7. The total number of officers who may be recommended in each competitive category shall be the number that most closely approximates the percentages set forth below of in-zone eligible officers as of the date the boards convene. The Chief of Naval Personnel shall determine the number of in-zone eligible officers as of the date the boards convene, calculate the numbers that may be recommended for promotion under the percentages set forth below, and shall furnish the numbers to the boards. The boards may recommend to the numbers provided by the Chief of Naval Personnel.

| COMPETITIVE CATEGORY | PERCENT TO SELECT |
|---|---|
| Unrestricted Line | 50 |
| Unrestricted Line (TAR) | 50 |
| Engineering Duty | 55 |
| Aerospace Engineering Duty (Engineering) | 50 |
| Aerospace Engineering Duty (Maintenance) | 50 |
| Aerospace Engineering Duty (Maintenance)(TAR) | 50 |
| Special Duty Officer (Cryptology) | 50 |
| Special Duty Officer (Merchant Marine) | 50 |
| Special Duty Officer (Intelligence) | 50 |
| Special Duty Officer (Intelligence) (TAR) | 50 |
| Special Duty Officer (Public Affairs) | 62 |
| Special Duty Officer (Fleet Support) | 50 |
| Special Duty Officer (Fleet Support) (TAR) | 50 |
| Special Duty Officer (Oceanography) | 50 |

8. The boards shall consider only those official records provided by the Chief of Naval Personnel as well as written communication from the eligible officers. Requests for additional information

Subj: PRECEPT CONVENING FISCAL YEAR 1997 SELECTION BOARDS
TO CONSIDER OFFICERS IN THE LINE OF THE NAVAL RESERVE
FOR PROMOTION TO THE PERMANENT GRADE OF CAPTAIN

can only be approved by the Secretary of the Navy. No board member, recorder, assistant recorder, or person acting on their behalf may communicate with an eligible officer, reporting senior, or other person to solicit information, favorable or unfavorable, about an eligible officer. The Chief of Naval Personnel may authorize communications as necessary to ensure that the official records are complete.

9. The boards shall fully comply with the instructions contained in enclosure (2), paragraph 9.

10. The reports of the boards, prepared per paragraphs 10 and 11 of enclosure (2), shall be forwarded for approval to the Secretary of the Navy via first, the Chief of Naval Personnel; second, the Chief of Naval Operations; and third, the Judge Advocate General of the Navy for legal review. Except as authorized or required by the Secretary of the Navy, the Secretary of Defense, or the President, no person shall disclose the proceedings or recommendations of a promotion selection board.

11. Enclosure (2) provides the oaths to be administered and supplemental guidance.

John H. Dalton
Secretary of the Navy

4

BOARD MEMBERSHIP

1. Unrestricted Line Officer and Unrestricted Line Officer (TAR):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
███████/1125
Captain Martin E. Janczak, U. S. Naval Reserve
███████/1115
Captain Michael F. Montgomery, U. S. Naval Reserve,
███████/1315
Captain Howard G. Montgomery, U. S. Naval Reserve,
███████/1115
Captain Calvin P. McClain, Jr., U. S. Naval Reserve,
███████/1125
Captain John S. Kistler, U. S. Naval Reserve,
███████/1317
Captain Thomas E. Plichta, U. S. Naval Reserve,
███████/1117
Captain Wayne L. Bates, U. S. Naval Reserve,
███████/1135
Captain David H. Cazares, U. S. Naval Reserve,
███████/1115
Captain Robert A. Duetsch, U. S. Naval Reserve,
███████/1327
Captain John B. Bell, U. S. Naval Reserve,
███████/1117
Captain Diane C. Vosilus, U. S. Naval Reserve,
███████/1705
Captain John G. Cotton, U. S. Naval Reserve,
███████/1315
Captain Philip J. Swartz, U. S. Naval Reserve,
███████/1315
Captain Rodney A. Carlone, U. S. Naval Reserve,
███████/1315
Captain Janet E. Denardo, U. S. Naval Reserve,
███████/1707

2. Engineering Duty Officer:
Rear Admiral (Lower Half) Lewis A. Felton, U. S. Navy,
███████/1440
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
███████/1125
Captain Martin E. Janczak, U. S. Naval Reserve
███████/1115
Captain Gary T. Satterfield, U. S. Naval Reserve,
███████/1445
Captain Thomas E. Plichta, U. S. Naval Reserve,
███████/1117
Captain Robert L. Merring, U. S. Naval Reserve,
███████/1445
Captain Janet E. Denardo, U. S. Naval Reserve,
███████/1707

Enclosure (1)

3. Aerospace Engineering Duty Officer (Engineering):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
████████/1125
Captain William E. Herron, U. S. Naval Reserve,
████████/1505
Captain Martin E. Janczak, U. S. Naval Reserve
████████/1115
Captain John S. Kistler, U. S. Naval Reserve,
████████/1317
Captain Bennett A. Morrow, U. S. Naval Reserve,
████████/1515

4. Aerospace Engineering Duty Officer (Maintenance) and Aerospace Engineering Duty Officer (Maintenance) (TAR):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
████████/1125
Captain William E. Herron, U. S. Naval Reserve,
████████/1505
Captain Martin E. Janczak, U. S. Naval Reserve
████████/1115
Captain John S. Kistler, U. S. Naval Reserve,
████████/1317
Captain Bernard A. Wunder, U. S. Naval Reserve,
████████/1525

5. Special Duty Officer (Cryptology):
Rear Admiral (Lower Half) Robert H. Weidman, Jr., U. S. Naval Reserve,
████████/1615
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
████████/1125
Captain Martin E. Janczak, U. S. Naval Reserve
████████/1115
Captain Christopher Rieber, U. S. Naval Reserve,
████████/1615
Captain Robert A. Duetsch, U. S. Naval Reserve,
████████/1327

6. Special Duty Officer (Merchant Marine):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve,
████████/1125
Captain Martin E. Janczak, U. S. Naval Reserve
████████/1115
Captain Austin L. Dooley, U. S. Naval Reserve,
████████/1625
Captain Albert S. McLemore, Jr., U. S. Naval Reserve,
████████/1675
Captain John B. Bell, U. S. Naval Reserve,
████████/1117

7. Special Duty Officer (Intelligence) and Special Duty Officer (Intelligence) (TAR):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve, ▆▆▆▆/1125
Captain Martin E. Janczak, U. S. Naval Reserve ▆▆▆▆/1115
Captain James E. Goldsmith, Jr., U. S. Naval Reserve, ▆▆▆▆/1637
Captain John S. Kistler, U. S. Naval Reserve, ▆▆▆▆/1317
Captain John A. Freeman, U. S. Naval Reserve, ▆▆▆▆/1635
Captain John C. Wright, U. S. Naval Reserve, ▆▆▆▆/1635
Captain Carolyn K. T. Griffing, U. S. Naval Reserve, ▆▆▆▆/1635

8. Special Duty Officer (Public Affairs):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve, ▆▆▆▆/1125
Captain Richard H. Wells, U. S. Naval Reserve, ▆▆▆▆/1655
Captain Martin E. Janczak, U. S. Naval Reserve ▆▆▆▆/1115
Captain Philip M. Strub, U. S. Naval Reserve, ▆▆▆▆/1655
Captain Thomas E. Plichta, U. S. Naval Reserve, ▆▆▆▆/1117
Captain Diane C. Vosilus, U. S. Naval Reserve, ▆▆▆▆/1705

9. Special Duty Officer (Fleet Support) and Special Duty Officer (Fleet Support) (TAR):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve, ▆▆▆▆/1125
Captain Martin E. Janczak, U. S. Naval Reserve ▆▆▆▆/1115
Captain John S. Kistler, U. S. Naval Reserve, ▆▆▆▆/1317
Captain Thomas R. Breese, U. S. Naval Reserve, ▆▆▆▆/1705
Captain John B. Bell, U. S. Naval Reserve, ▆▆▆▆/1117
Captain Diane C. Vosilus, U. S. Naval Reserve, ▆▆▆▆/1705
Captain Janet E. Denardo, U. S. Naval Reserve, ▆▆▆▆/1707

10. Special Duty Officer (Oceanography):
Rear Admiral (Lower Half) Bradley C. Poole, U. S. Naval Reserve, ▆▆▆▆/1125
Captain Martin E. Janczak, U. S. Naval Reserve ▆▆▆▆/1115
Captain Marshall P. Waters, U. S. Naval Reserve, ▆▆▆▆/1805

Captain John S. Kistler, U. S. Naval Reserve,
████████/1317
Captain John S. Daughenbaugh, U. S. Naval Reserve,
████████/1805

11. LCDR Reginald C. Campbell, USNR will act as recorder. CDR Kay M. Holt, USNR; CDR James W. Kelley, Jr., USNR; CDR Darlene R. Wood-Harvey, USN; CDR Donna L. Brown, USNR; CDR Malcolm J. McPhee, Jr., USNR; LCDR Catherine D. Ripley, USN; LCDR Robert K. Gerberding, USNR; LCDR Laura L. Venable, USNR; LT Keith B. Wichmann, USN; LT William J. Guarini, Jr., USN; LT John Friedenreich, USNR and ENS Carl D. Cox, USN will act as assistant recorders. The recorder or an assistant recorder will be present during all deliberations.

12. CAPT W. D. Vandivort, USNR; CAPT H. J. Nyland, USNR; CAPT R. F. Walsh, JAGC, USN; CDR M. K. Carlock, USNR; CDR R. A. Vogt, USNR; LCDR A. W. Acevedo, USNR; LCDR E. Burdick, USN; LCDR G. E. Stange, USNR; LCDR W. Kearns, USN; LT J. Key, USN; LT M. Minotti, USN, LT R. Johnson, USNR; LT D. Hand, USN; LT R. E. Prass, USN; Mr. D. German, GS-8; YNC(SW) F. Bostic, USN; YN1(SW) C. Shelton, USNR(TAR); DP1 J. Mastin, USNR(TAR); DP1 E. Polak, USNR(TAR) and DP2 K. Sedwick, USNR(TAR) are designated to serve as projectionists and administrative support personnel to these boards.

4

## SUPPLEMENTAL GUIDANCE

1. The following oath or affirmation shall be administered to the recorder and assistant recorders by the president of the boards:

> "You, and each of you, do solemnly swear (or affirm) you will keep a true record of the proceedings of the boards, and you will not divulge the proceedings of these boards except as authorized or required by the Secretary of the Navy or higher authority. So help you God."

The following oath or affirmation shall then be administered by the recorder to the members of the boards:

> "You, and each of you, do solemnly swear (or affirm) you will perform your duties as a member of these boards without prejudice or partiality, having in view both the special fitness of officers and the efficiency of the Naval Service, and you will not divulge the proceedings of these boards except as authorized or required by the Secretary of the Navy or higher authority. So help you God."

The following oath or affirmation shall then be administered by the recorder to the projectionists and other support personnel:

> "You, and each of you, do solemnly swear (or affirm) you will not divulge the proceedings of these boards except as authorized or required by the Secretary of the Navy or higher authority. So help you God."

2. Due to historic statutory restrictions on the assignment of women in the Navy, the records of female officers before the boards may show a career pattern different from that of their male counterparts. Such pre-existing restrictions on duty assignments, which have foreclosed to women opportunities for operational and command assignments available to men, cannot be allowed to prejudice the selection of women for promotion. Accordingly, in determining a woman's qualification for promotion, duty performed by a female officer, whose assignability was constrained by law or policy, shall be given weight equal to duty performed by a male officer not so constrained which is equally well performed. In evaluating a female officer, emphasis will be placed on her actual performance in assignments rather than her pattern of assignments as compared to male officers.

3. The Department of the Navy is dedicated to equality of treatment and opportunity for all personnel without regard to race, creed, color, sex, or national origin. Aggressive commitment to equal opportunity is critical.

    a. Many minority officers have been assigned involuntarily outside the traditional career development patterns, i.e., recruiting, equal opportunity, and specific billets requiring minorities. These assignments, though beneficial to the interests of

Enclosure (2)

the Navy, have resulted in those officers having career patterns different from officers who have been able to serve in their primary or warfare specialties. In making your determination of those officers who are best and fully qualified for promotion, you must view such assignments as having the same value as assignments within the primary or warfare specialty.

    b. **The 1988 CNO Study Group Report on Equal Opportunity in the Navy**, which is available to you, noted that minority officers who, prior to entering the Navy, had limited interaction with a predominantly majority environment, may take a longer time to adjust and perform to the level of their contemporaries. This may result in initially lower fitness reports at the junior officer level (through O-3) and a higher percentage of "late bloomers" than their majority counterparts. You must consider this when evaluating a minority officer's potential and in determining which eligible officers are best and fully qualified for promotion.

    c. Minority officers historically have not been promoted at rates equivalent to those of non-minority officers. In evaluating the records of officers, the boards should be aware that past discrimination may have operated to the disadvantage of minority officers. Such discrimination may have manifested itself in disproportionately lower fitness reports. Equivalent performance by a minority officer and a non-minority officer may not have resulted in equivalent fitness reports. The boards must consider this when evaluating a minority officer's potential and in determining which eligible officers are best and fully qualified for promotion.

    d. The charter of these boards is to select those officers who are "best and fully qualified". Within this charter, the Navy's goal is to achieve a minority selection rate which is at least equal to the selection opportunity within the relevant grade and competitive category. This goal is important because, to the extent each board achieves it, the Navy benefits by ensuring the talents of minority officers are not overlooked due to the officer's past assignments, precommissioning social background, or possibly biased fitness reports. Prior to adjournment, the boards must review the extent to which the goal of equivalent selection rates has been met.

4. Promotion boards are prohibited from considering the marital status of a member or the employment, education, or volunteer service of a spouse.

5. Post-graduate education and specialty skills (represented by proven subspecialties) are important to our Navy and represent a key investment in our future. The Navy needs officers with formal technical and military education in a time of increasing technological sophistication. In determining an officer's fitness for promotion, selection boards should consider time spent obtaining post-graduate degrees and military education, and gaining experience in other specialized areas in a positive light, notwithstanding the usual "not observed" report of fitness during these periods.

2

Assignments outside traditional career patterns that allow the Navy to use the unique skills and expertise of these officers in subspeciality areas should be likewise positively considered.

6. Repeated tours in a particular geographic location should not be considered negatively provided the officer has progressed in billet complexity, professional development, and leadership responsibility.

7. The official military personnel records provided to the boards may include medical documents relevant to an officer's physical qualifications. If the boards desire clarification of any such document, then the board president should reduce the board's questions to writing and forward them to me. I will provide such clarification as may be appropriate.

8. The president of the boards has been appointed by me and shall perform prescribed administrative duties. The board president has no authority to constrain the boards from recommending for promotion those fully qualified officers that the majority finds best qualified to meet the needs of the Navy as specified by the Secretary. The board president shall ensure that paragraph 9 of this enclosure is read to each board member, recorder, and administrative support person on the convening date of the board or on the date of assignment to the board, whichever is later.

9. The following instructions concerning communications and information apply to board proceedings:

    a. Each of you (president, members, recorders, and administrative support personnel) is responsible to maintain the integrity and independence of these selection boards, and to foster careful consideration, without prejudice or partiality, of all eligible officers.

    b. You must pay particularly close attention to the rules governing communications with and among other board members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of these selection boards has been improperly affected.

    c. You may not receive, initiate, or participate in communications or discussions involving information precluded from consideration by a selection board. You are to base your recommendations on the material in each officer's military record, any information I have provided to the boards and any information communicated to you by individual eligible officers under regulations I have issued. In your deliberations, you may discuss your own personal knowledge and evaluation of the professional qualifications of eligible officers to the extent that such matters are not precluded in law or service regulation from consideration by a selection board or inclusion in an officer's military personnel record. You may not discuss or disclose the opinion of any person not a member of the boards concerning an officer being considered unless that opinion is contained in material provided to the boards.

3

    d.  I am the only person who may appear in person to address you on any matter. All communications with these boards, other than those that are clearly administrative, must be in writing, given to each of you, and made part of the boards' records. I have designated in writing those persons authorized to provide routine administrative information to you.

    e.  Before the reports of the selection boards are signed, the recommendations may be disclosed only to members of the boards, recorders and those administrative support personnel I have designated in writing. After you sign the boards' reports, only the recommendations of the boards may be disclosed. Except as authorized by Section 5898 of Title 10, United States Code, the proceedings of the boards may not be disclosed to any person not a board member or board recorder.

    f.  If at anytime you believe that you cannot in good conscience perform your duties as a member of these boards without prejudice or partiality, you have a duty to request relief by me from this duty. I will honor any such request. If you believe that the integrity of the boards' proceedings has been affected by improper influence of military or civilian authority, misconduct by the board president or a member, or any other reason, or believe someone is exerting or attempting to exert inappropriate influence over the boards or the proceedings, you have a duty to request from me or the Secretary of Defense relief from your obligation not to disclose board proceedings and, upon receiving it, to report the basis for this belief.

    g.  Upon the completion of the boards' deliberations, you will, as a minimum, certify in your reports to me that:

        (1)  To the best of your knowledge, the boards complied with all instructions contained in the precept, and as appropriate, other letters of guidance or instruction provided by me;

        (2)  You were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the boards or the exercise of any lawful function within the authorized discretion of the boards;

        (3)  You were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the boards' recommendations;

        (4)  You were not party to or aware of any attempt at unauthorized communications;

        (5)  To the best of your knowledge, the boards carefully considered the record of each officer whose name was furnished to the boards; and

        (6)  The officers recommended for promotion are, in the opinion of the majority of the members of the boards, fully qualified and best qualified to meet the needs of the Navy among those officers whose names were furnished to the boards.

4

10. The written reports of the boards shall be signed by the board president, the board members, and the board recorders, and shall contain a list of the names of the officers it recommends for promotion, with the certification described in paragraph 9g.

11. The records of the boards' proceedings shall be compiled by the recorders and administrative support staff and shall contain at a minimum:

    a. Convening notice.

    b. All instructions, information, and guidance that were provided to the boards, under Section 5895 of Title 10, United States Code.

    c. The written reports of the boards.

    d. A list of all officers eligible for consideration.

    e. Precept.